## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

FEB 16 2016

U.S. COURT OF
FEDERAL CLAIMS

LYNN FITCH, TREASURER OF THE
STATE OF MISSISSIPPI,

       *Plaintiff*,

v.

UNITED STATES OF AMERICA,

       *Defendant*.

Case No. 16-__16-231C__

## COMPLAINT

Plaintiff Lynn Fitch, as Treasurer of the State of Mississippi, for a Complaint by and through her attorneys of record, Mississippi Attorney General Jim Hood and J. Brett Milbourn, hereby states:

### INTRODUCTION

1.    This action seeks just compensation from the United States of America pursuant to the Code of Federal Regulations 31 C.F.R. § 315 *et seq.* and 31 C.F.R. § 353 *et seq.* ("Treasury Regulations") for money damages owed to the State of Mississippi by the United States Department of the Treasury ("Treasury"). Mississippi has requested from Treasury the records and information necessary to redeem for value certain United States savings bonds to which it holds title as the sole and valid bond owner. Treasury has refused to fully comply with Mississippi's requests, in clear violation of the governing law.

2.    Treasury began selling U.S. savings bonds in the 1930s. Savings bonds bear long maturities, and vast numbers remain unredeemed long after they mature. Treasury has never affirmatively notified owners when their bonds mature, even though it possesses

information that would enable it to do so.  Nor does Treasury undertake any effort to locate missing owners.  As a result, unclaimed savings bonds with an estimated combined matured value of more than $17 billion, many of which reached final maturity and ceased earning interest decades ago, have accumulated at Treasury.  Based on population studies, forensic accounting, and information from Treasury, approximately $155 million of that amount corresponds to purchasers of unclaimed, matured savings bonds that were originally registered to individuals with last known addresses in the State of Mississippi.

3.      Pursuant to a Judgment of Escheatment entered in accordance with the procedures set forth in Mississippi's Uniform Disposition of Unclaimed Property Act (the "Mississippi Act"), the State of Mississippi took — as of the date Treasurer Fitch filed a complaint under the Mississippi Act seeking a determination that the bonds at issue in this case had escheated to the State — sole and valid title to certain matured, unclaimed U.S. savings bonds currently held by Treasury that are registered to persons with last known addresses in the State of Mississippi, and which have been lost, stolen, abandoned, destroyed, or relinquished, and are not in the Mississippi Treasurer's possession ("Absent Bonds").

4.      The Mississippi Act grants Mississippi the legal authority to seek all right, title, and interest in such unclaimed, matured U.S. savings bonds through judicial escheatment and to maintain ownership over the proceeds thereof.  Furthermore, Mississippi's unclaimed property laws empower the State Treasurer to take steps to return the proceeds of redeemed savings bonds to the bonds' original owners (many of whom are no longer aware they ever held bonds or that those bonds matured).  This Court has held that, under applicable Treasury regulations, a State that escheats title to matured, unredeemed savings bonds is a

valid bond owner that may redeem the bonds for value.  *See Estes v. United States*, – Fed Cl. –, 2015 WL 4971159 (Fed. Cl. Aug. 20, 2015).

5.      Pursuant to these established legal processes, Plaintiff informed Treasury that Mississippi was the proper titleholder of the Absent Bonds, and requested that Treasury provide Mississippi with the registration information for the Absent Bonds so that Plaintiff can identify the set of Absent Bonds to which the State of Mississippi now holds title.  Treasury has refused to fully comply with Plaintiff's repeated requests with respect to the Absent Bonds.  This is unlawful.

6.      No legal authority in force at the time Mississippi succeeded to title to the Absent Bonds allowed Treasury or any other federal instrumentality to maintain custody of unclaimed, matured U.S. savings bonds and the proceeds thereof to the exclusion of a valid titleholder.  Treasury's treatment of Mississippi's claim thus amounts to an unlawful withholding of hundreds of millions of dollars to which Mississippi is properly entitled under state and federal law.  Plaintiff Fitch, on her own behalf and on behalf of the State of Mississippi, thus brings this action to remedy this harm and compel Treasury to finally pay this massive debt owed Mississippi and its residents.

## THE PARTIES

7.      Plaintiff, Lynn Fitch, is the Mississippi State Treasurer, with a business address at the Treasurer's Office, State of Mississippi, 501 North West Street, Suite 1101, Jackson, MS 39201.  Treasurer Fitch is the state official having responsibility for Mississippi unclaimed property and undertaking judicial escheatment procedures pursuant to Mississippi law.  Miss. Code Ann. § 89-12-59.  Plaintiff sues in her own right and on behalf of the State of Mississippi.

8.   The Defendant is the United States of America ("United States").   At all relevant times herein, the Defendant was acting by and through the Treasury, an administrative agency of the United States; Jacob J. Lew, Secretary of the Treasury; the Bureau of the Fiscal Service ("Bureau"), a Division of the Treasury; David Lebryk, Fiscal Assistant Secretary; Sheryl Morrow, Commissioner of the Bureau; and Steven D. Miller, Deputy Assistant Commissioner, Office of Management Services of the Bureau.

9.   The Bureau has direct responsibility for the administration of the U.S. savings bond program, with a business address at PO Box 5312, Parkersburg, WV 26106 or 200 Third Street, Parkersburg, WV 26106.

## JURISDICTION

10.   Jurisdiction is proper in this Court, as the matter herein lies within the express jurisdictional mandate of the Tucker Act, 28 U.S.C. § 1491.   Specifically, the claims herein are against the United States of America and are founded upon contracts wherein Plaintiff seeks monetary damages.   *See id.*; *see also* 31 C.F.R. § 315 *et seq.*; 31 C.F.R. § 353 *et seq.*

## BACKGROUND

### U.S. Savings Bonds

11.   Treasury began selling U.S. savings bonds between the First World War and Second World War.   The maturity terms for the vast majority of the bonds at issue in this case are lengthy, typically 30-40 years, and many of the bonds were first issued as far back as 1935, 1941, 1951, and 1952.   As a result, many of the Absent Bonds have been mature (but unredeemed) for decades and are well over 60, and in some cases 80, years old.   Many of these unredeemed savings bonds are registered to individuals with last known addresses in Mississippi.

4

12.   Savings bonds are issued in various "Series," each series represented by a letter (or letters) of the alphabet.  The U.S. savings bonds owned by Plaintiff and at issue in this case belong to Series A, B, C, D, E, F, G, H, J, K, and HH.

13.   The majority of the matured, unredeemed U.S. savings bonds are Series "E" bonds, which were first sold in 1941.  Nearly 4.6 billion Series E bonds were sold between 1941 and 1980.  Between 1941 and November 30, 1965, Series E bonds were sold with 40-year terms.  Between December 1, 1965 and 1980, they carried 30-year terms.  The last Series E bond was sold in 1980, and the first such bonds matured and ceased earning interest in 1981.  *All* Series E bonds have reached final maturity and ceased earning interest, the last of them doing so in 2010.  Yet according to information published on Treasury's website, unredeemed Series E bonds currently have a combined matured value of more than $9.8 billion.

14.   Series A, B, C, and D bonds were sold from March l, 1935, through April 30, 1941.  These bonds were sold with 10-year terms and all reached maturity by April 1951.

15.   Series F and G bonds were sold from May 1, 1941, through April 30, 1952.  Series F and G bonds were sold with 12-year terms.  All Series F and G bonds reached maturity by April 1, 1964.

16.   Series H bonds were sold from June 1, 1952, through December 31, 1979.  Series H bonds with issue dates from June 1952 through January 1957 ended up having an interest paying term of 29 years, 8 months; Series H bonds with issue dates from February 1957 through December 1979 ended up having an interest paying term of 30 years.  All Series H bonds reached maturity by December 2009.

17.   Series J and K bonds were sold from May 1, 1952, through April 30, 1957.  Series J and K
      bonds were sold with a term of 12 years.  All Series J and K bonds reached maturity by
      April 1969.

18.   Series HH bonds were sold from January 1, 1980, through August 31, 2004.  Series HH
      bonds were sold with 20-year terms.  The first Series HH bonds matured and ceased earning
      interest in January 2000.

19.   For each U.S. savings bond sold by Treasury, the Bureau of the Public Debt (now
      consolidated along with the Financial Management Service into a new bureau, the Bureau of
      the Fiscal Service, or "Bureau") issues and maintains a registration record reflecting the last
      known addresses of registered owners.  Treasury's regulations also require the Bureau, on
      each sale of a U.S. savings bond, to register the bond with a record identifying the owner of
      the bond and the address of that person or entity at the time of sale.  *See* 31 C.F.R. §§ 315.5;
      353.5.

20.   When U.S. savings bonds mature, Treasury has not and does not notify owners, not even by
      utilizing the addresses in its records.  Nor does Treasury publish any other form of notice to
      owners or undertake any effort to locate missing owners.  It is common for bonds to reach
      maturity without Treasury having contacted the owner even once in 30 or 40 years,
      especially for bonds that pay no periodic interest.

21.   To redeem a long-matured U.S. savings bond, an owner or other person or entity entitled to
      request payment of the U.S. savings bond must affirmatively contact Treasury or one of its
      registered agents with a formal request.  But Treasury's failure to notify owners when bonds
      mature, combined with the lengthy maturation periods of U.S. savings bonds and relatively
      small face amounts, has resulted in many individuals misplacing, forgetting about, or

otherwise abandoning their bonds.  Owners of bonds may live their entire lives never knowing that they had rights to one or more U.S. savings bonds and the proceeds thereof. In fact, thousands of these bond owners have died with little to no assets but their savings bonds which were never paid back to them.

22.     As a result, approximately $17 billion in matured, unredeemed U.S. savings bonds remain outstanding nationwide.  The Mississippi Treasurer's Office estimates that approximately $155 million, or 0.9%, of that amount corresponds with registered owners with last known addresses in the State of Mississippi.

**Mississippi's Title-Based Escheat Statute**

23.     Every State in the U.S. and the District of Columbia operates an "unclaimed property" program designed to reunite lost and abandoned property with owners.  Annually, these programs combine to return more than one billion dollars' worth of property that, but for these programs, would almost certainly remain lost.  These programs apply both to tangible property (*e.g.*, collectibles or art) and intangible property (*e.g.*, U.S. savings bonds or stock certificates).

24.     State unclaimed property laws rely on the ancient sovereign power of escheat.  Historically, States' unclaimed property acts have provided for custody-based escheat.  Once property is considered abandoned or unclaimed under state law, *custody* of the property, but not title, passes to the State for safekeeping and administration.  Once the State has custody, it can leverage its unclaimed property program to attempt to unite lost property with its owner.

25.     However, several states (17 and counting), including Mississippi, have adopted *title*-based escheat laws with respect to U.S. savings bonds.  In 2014, Mississippi, in reliance on Treasury's longstanding promises to recognize title based escheat, amended the Mississippi

Act to authorize the State to escheat title to — that is, valid legal ownership of — matured, unclaimed savings bonds following required state proceedings and then to leverage the State's unclaimed property programs to make available the return of the bond proceeds to the bonds' original owners. *See* Miss. Code Ann. § 89-12-59.

26. The Mississippi Act further authorizes the State Treasurer (Plaintiff Fitch) to redeem the bonds that escheat to the State and take title to the matured proceeds. This Court has held that the Treasury regulations in force at the time Mississippi succeeded to title to the Absent Bonds required the agency to recognize redemption claims by States that escheat title to savings bonds under state law. *See Estes v. United States*, – Fed Cl. –, 2015 WL 4971159 (Fed. Cl. Aug. 20, 2015).

27. Pursuant to the specific provisions of the Mississippi Act, unredeemed U.S. savings bonds escheat to the State under the following process:

   a. U.S. savings bonds are "payable" upon maturity.

   b. U.S. savings bonds are "presumed abandoned" property if the last known address of the owner of the property is in Mississippi and the property has remained unclaimed for 5 years after the final maturity date. *See* Miss. Code Ann. §§ 89-12-14(1), 89-12-15, 89-12-16.

   c. Three years after U.S. savings bonds become abandoned property (*i.e.*, 8 years after the maturity date), unclaimed U.S. savings bonds are capable of escheating to Mississippi, such that all property rights, including title to the U.S. savings bonds or proceeds from such bonds, vest solely in Mississippi. Miss. Code Ann. § 89-12-59 (1).

d. The Mississippi Treasurer must commence an action in the Circuit Court of the First Judicial District of Hinds County, Mississippi, for a determination that the U.S. savings bonds have escheated to the state (the "escheat action").  Miss. Code Ann. § 89-12-59(2).

e. The Mississippi Treasurer must make service by publication of the proceeding in Hinds County in accordance with Mississippi Rule of Civil Procedure 4(c)(4).  In addition, the Mississippi Treasurer must file an affidavit outlining the due diligence efforts taken to locate and notify defendants.  Miss. R. Civ. P. 4(c)(4)(A).

f. If no one files a claim or appears at the escheat action hearing claiming entitlement to the bonds, or if the court determines that a claimant is not entitled to the bonds, then the court, if satisfied that the Mississippi Treasurer has substantially complied with the Mississippi Act, shall enter a judgment that the U.S. savings bonds have escheated to Mississippi.  Miss. Code Ann. § 89-12-59(3).

g. The Mississippi Treasurer will then redeem any U.S. savings bonds that escheated to Mississippi pursuant to the court's order, and deposit the proceeds of the bonds into the State General Fund.  Miss. Code Ann. § 89-12-59(4).

**Public Bulletin No. 111, the "Escheat Decision," and Treasury's Regulations**

28. In 1952, the Bureau of the Public Debt promulgated Public Bulletin No. 111 setting out Treasury's position with respect to "State statutes purporting to vest abandoned property, including United States securities, in certain State officers."  Bulletin No. 111, which

contains an extensive legal analysis to support Treasury's interpretation of its regulations relating to this subject, includes the following statement:

> the Department will pay one who *succeeds to the title* of the bondholder. This is not regarded as a violation of the agreement, but, on the contrary, as payment to the bondholder in the person of his successor or representative. Thus, although the regulations do not mention such a case, the Department recognizes the title of the state when it makes claim based upon a judgment of escheat.

29. In 1983, the Treasury's Director of Transactions and Rulings stated as follows in a letter to the Kentucky Secretary of Revenue regarding a request by that State for payment of abandoned U.S. savings bonds:

> The Treasury has considered at length on several occasions the matter of whether a State could be recognized as entitled to the proceeds of United States securities where the claim thereto is based on abandonment. Basically, the Department's position is that claims by States for payment of United States securities will be recognized only where the States have actually succeeded to the title and ownership of the securities pursuant to valid escheat proceedings. The Department does not recognize claims for payment by a State acting merely as a custodian of unclaimed or abandoned securities and not as successor in title and ownership of the securities. … In other words, the Treasury recognizes escheat statutes that provide that a State has succeeded to the legal ownership of securities because in such case payment of the securities results in full discharge of the Treasury's obligation and this discharge is valid in all jurisdictions. Payment of securities to a State claiming only as a custodian results in the substitution of the State for the Department of the Treasury as obligor on the securities. …

30. In 2000, Treasury published the following statement (hereinafter, the "Escheat Decision") on its website, on a webpage entitled "EE/E Savings Bonds FAQs":[1]

> The Department of the Treasury will recognize claims by States for payment of United States securities where the States have succeeded to the title and ownership of the securities pursuant to valid escheat proceedings. The Department, however, does not recognize claims for payment by a State

---

[1] *See EE/E Savings Bonds FAQs*, TreasuryDirect.gov, *available at* https://web.archive.org/web/20150503150349/https://www.treasurydirect.gov/indiv/research/ind epth/ebonds/res_e_bonds_eefaq.htm#escheatment (archive of webpage as of May 2015) (emphasis added).

acting merely as custodian of unclaimed or abandoned securities and not as successor in title and ownership of the securities.

In other words, the Treasury recognizes escheat statutes that provide that a State has succeeded to the legal ownership of securities <u>because in such case payment of the securities results in full discharge of the Treasury's obligation and this discharge is valid in all jurisdictions</u>.

But, payment of securities to a State claiming only as a custodian results in the substitution of one obligor, the Department of the Treasury, for another, the State. Not only is there serious question whether there is authority for a State to effect such a substitution, but also there seems to be no basis for believing that payment to a State custodian would discharge Treasury of its obligation. Even if the discharge were claimed effective in the State to which the payment is made, it is believed that the Treasury's obligation and liability would still remain in force in all other jurisdictions.

31.    Thereafter, in 2006, Treasury's Assistant Commissioner, Office of Investor Services, stated as follows in a letter to Florida's legal counsel to the State's Chief Financial Officer regarding a request by that State for payment of abandoned U.S. savings bonds:

The applicable regulations would permit the state of Florida to be paid for bonds, pursuant to an appropriate state statute and after due process, by obtaining an order of escheat from a court of competent jurisdiction vesting title in the state, and then applying for payment to the Department of the Treasury pursuant to the procedures established by the regulations that all bond owners must utilize.  The Treasury Department has no authority to pay Florida (or anyone else) the proceeds of matured but unredeemed savings bonds owned by the residents of Florida outside the context of these procedures.

Notably, the 2006 letter to the State of Florida does not explicitly provide that possession is required if a State seeks to redeem a bond.  Instead, that letter states that if Florida invokes a proper title escheatment process, it can be paid for the bonds under "[t]he applicable regulations."  Moreover, the letter undermines Treasury's latest rationale for redeeming bonds in a State's possession — the application of its discretionary waiver authority under 31 C.F.R. § 315.88 — which it has used in granting South Dakota's and Louisiana's recent requests for the redemption of such bonds.

32.   Treasury's Escheat Decision, excerpted above, expressly rejected any right of the states to redeem unclaimed U.S. savings bonds over which they only have *custody*.  But the Decision made clear that Treasury will honor *title-based* unclaimed property laws (the type in force in Mississippi).   Under the authority of the Escheat Decision, Treasury has consistently rejected written requests to Treasury to deliver matured, unredeemed bonds into state custody in accordance with *custody-based* unclaimed property laws.  When it has done so, Treasury has relied on the longstanding distinction it has drawn between custody-based and title-based escheat.  *E.g*., *Treasurer of New Jersey v. U.S. Dept. of Treasury*, 684 F.3d 382, 390-91 (2012).

33.   The United States has previously stipulated that the Escheat Decision "is [Treasury]'s interpretation of federal savings bond regulations ... and reflects [Treasury]'s understanding of existing laws, and that the Department has no intention of deviating from the statement." *Treasurer of New Jersey v. U.S. Dep't of Treasury,* 684 F.3d at 391 (internal quotation marks omitted).  As the Solicitor General of the United States has recently acknowledged in the Supreme Court of the United States, "the Escheat Decision represents the [Treasury] Department's considered interpretation of federal law."  Brief for Resp'ts in Opp'n at 4 Dir. of the Dep't of Revenue of Mont. v. Dep't of the Treasury, 133 S. Ct. 2735 (2013) (No. 12-926), 2013 WL 1803570 at *4.

34.   The Escheat Decision remained online at least through May 2015.   Treasury took the Escheat Decision off of its website while the government's motion to dismiss in *Estes v. United States* was pending.

35.   Also while the government's motion to dismiss in *Estes* was pending, Treasury issued a Notice of Proposed Rulemaking, in which Treasury proposed to amend its regulations

governing U.S. savings bonds to address state escheat claims to unclaimed bonds.  *See*
Regulations Governing United States Savings Bonds, 80 Fed. Reg. 37,559 (proposed July 1,
2015).

36.    On December 24, 2015 — over a month after Mississippi succeeded to title to the Absent
Bonds — Treasury issued a final rule purporting "to clarify its prior statements on escheat
and to describe more formally the criteria Treasury will use to evaluate escheat claims."  80
Fed. Reg. 80,258, 80,259 (Dec. 24, 2015) ("Final Rule").  The Final Rule provides that
Treasury will not redeem escheated bonds that a State does not possess, but may — in its
discretion — redeem escheated bonds in the State's possession when the State provides
satisfactory evidence of abandonment.

37.    The Final Rule does not apply to this case because Mississippi's title vested under the prior
regulations.

38.    The Treasury regulations that were in force when Mississippi succeeded to title to the
Absent Bonds provide for redemption of a savings bond by a State that escheats title to the
bond.  Under 31 C.F.R. §§ 315.20, 353.20, Treasury is required to recognize a claim of
"interest in" U.S. savings bonds where such interest is established by "valid, judicial
proceedings," such as those provided for in the Mississippi Act.  Proceeds of U.S. savings
bonds will be paid to a "person or persons entitled under the provisions of these regulations .
. . without regard to any notice of adverse claims to a bond" under 31 C.F.R. §§ 315.35,
353.35.  As this Court has explained — analyzing the Treasury regulations in force at the
time Mississippi's title vested — § 315.20 and § 353.20 required Treasury to recognize as a
valid owner of a savings bond a State that escheats to title following valid "State court
escheatment proceedings."  *Estes*, 2015 WL 4971159, at *11.

39.     Thus, at the time Mississippi succeeded to title to the Absent Bonds, Treasury lacked any authority — regulatory, statutory, or otherwise — to withhold the proceeds of matured bonds in the face of Mississippi's requests for redemption.

40.     Treasury Regulations further provide that proceeds of a lost, stolen or destroyed bond may be paid to a rightful owner or to his or her representative.  *See* 31 C.F.R. §§ 315.25, 353.25   The payment will be made if the serial number of the lost bond is made known, provided that the claim is made by a person authorized to make such a claim.  *See* 31 C.F.R. §§ 315.26, 353.26.

### THE PRESENT ACTION

### Mississippi Escheat Proceedings

41.     On or about November 18, 2015, counsel for Plaintiff filed a Complaint for Declaratory Judgment in the State of Mississippi, County of Hinds, pursuant to Mississippi's title-based escheat procedure for U.S. savings bonds, Miss. Code Ann. § 89-12-59 (2) (hereinafter the "Mississippi Escheat Proceedings").  Plaintiff requested a determination that all rights and legal title to, and ownership of, the Absent Bonds, which were unclaimed property under the Mississippi Act, had escheated to the State of Mississippi.  (**Exhibit A**)

42.     Also on November 18, 2015, Plaintiff filed a Motion Seeking Leave to Effect Service by Publication, along with an Affidavit for Service by Publication.  (**Exhibit B**).

43.     On or about November 18, 2015, Judge Winston L. Kidd of the Circuit Court of the first Judicial District of Hinds County, State of Mississippi, reviewed the facts and evidence before the Court.  After consideration of the arguments and representations of counsel and of all other legal and factual matters relevant to Plaintiff's motion, the court entered an Order to Affect Service by Publication.  (**Exhibit C**).

44.     On January 11, 2016, following a hearing in the Mississippi Escheat Proceedings before the same Circuit Court of Hinds County, Mississippi, the court, after reviewing the evidence provided, made its findings and entered orders enumerated in a Judgment of Escheatment (**Exhibit D**), which recognized that pursuant to the Mississippi escheat statute title to the Absent Bonds properly escheated to the state of Mississippi as of November 18, 2015, the date Plaintiff filed the Complaint for Declaratory Judgment (**Exh. A**).

45.     Among other things, the court found that Plaintiff fully complied with Mississippi's process for publication and published lawful notice comporting with due process under the constitutions of the United States and the state of Mississippi.  (**See Exhibit D**, at ¶¶ 23-24.) The court further found that Plaintiff's publication efforts went well beyond the minimum required to comply with Mississippi law and due process.

### Mississippi's Requests to Treasury Concerning the Absent Bonds

46.     Before and following the escheatment of the Absent Bonds, Plaintiff corresponded with Treasury to request records and information regarding the bonds at issue.  Post-escheatment, Plaintiff requested that the information necessary for Mississippi to redeem the Absent bonds — information solely held by Treasury and nowhere else, and which Treasury is obligated to maintain — be delivered to Mississippi as titleholder.  Treasury refused to fully comply with these requests in breach of its regulations.

47.     Prior to the escheatment, on December 10, 2014, counsel for Plaintiff filed with the Bureau a formal Freedom of Information Act ("FOIA") request on behalf of the Mississippi Treasurer's Office regarding the U.S. savings bonds to which Mississippi now holds valid title.  Counsel requested that the Bureau either provide records, or access to records, that would give the Mississippi Treasurer's Office information on unclaimed bonds issued to individuals with last

known addresses in the State of Mississippi.  Counsel requested, *inter alia*, serial numbers and registration information, so that Plaintiff may provide the information necessary to redeem these bonds under applicable Treasury Regulations. (**See Exhibit B, attachment 2**).

48.    On January 30, 2015, counsel for Plaintiff corresponded with the Bureau on behalf of the Mississippi Treasurer's Office, requesting records regarding unclaimed savings bonds issued to individuals with last known addresses in the State of Mississippi (**See Exhibit B, attachment 3**).  This request was for records or access to records that would provide information regarding these unclaimed bonds.  Counsel's correspondence with the Commissioner was not a formal FOIA request, but a direct attempt to resolve the issues at hand with Treasury cooperatively. The Commissioner did not respond to this request for information.

49.    On February 18, 2015, Denise Nelson, Disclosure Officer for Treasury, issued a response to Plaintiff's FOIA request invoking 31 C.F.R. § 323.2(b), which describes limitations on record availability regarding securities and states that such records "will ordinarily be disclosed only to the *owners of such securities*, their executors, administrators or other legal representatives or to their survivors or to investigative and certain other agencies of the Federal and State governments, to trustees in bankruptcy, receivers of insolvents' estates or where a proper order has been entered requesting disclosure of information to Federal and State courts."  (**See Exhibit B, attachment 4**).  The response also asserted that "[d]isclosure of this information would not serve the core purpose of the FOIA, which is to shed light on an agency's performance of its statutory duties." (*Id.*)  The request was denied as to information relating to bonds that had been issued to individuals.

50.     Thereafter, on or about February 10, 2016, Treasurer Fitch followed up with a second FOIA request (**Exhibit E,** attachments omitted), this time as the title holder of Mississippi's Absent Bonds.

51.     Numerous other states with title-based escheat laws similar to the Mississippi Act have recently attempted to redeem for value matured, unclaimed U.S. savings bonds to which the state holds valid title, but which have been lost, stolen, abandoned, destroyed, or relinquished, and are not in those states' possession.  Treasury has denied their redemption requests with respect to these bonds.  Accordingly, Plaintiff anticipates that Treasury would also deny any such requests made on behalf of the State of Mississippi, and thus has made no further post-escheatment requests to Treasury for records relating to, or redemption of, the Absent Bonds on the basis that such requests would be futile.

52.     By failing and refusing to recognize the validity of the Judgment of Escheatment and Plaintiff's right to redeem the Absent Bonds, Treasury has failed to comply with its obligations under its Regulations in force at the time Mississippi succeeded to title to the Absent Bonds and is, therefore, in breach thereof.

53.     Treasury's unlawful refusal to redeem the hundreds of millions of dollars in savings bonds to which Mississippi holds valid title damaged Plaintiff and the State of Mississippi in a precise amount to be determined according to proof.

## COUNT I

### (Breach of Express Contract)

54.     Plaintiff incorporates by reference the allegations in paragraphs 1-53 as though fully set forth herein.

55.  The subject U.S savings bonds are express contracts between the bond owner and the United States.  *Rotman v. United States*, 31 Fed. Cl. 724, 725 (1994).  Treasury Regulations constitute the terms of each of these contracts.  *Wolak v. United States*, 366 F. Supp. 110, 110 (D. Conn. 1973).  Plaintiff is a party in privity with Defendant because Mississippi became the sole title owner of the Absent Bonds pursuant to valid judicial escheat proceedings.

56.  As this Court has held, the Treasury regulations in force at time Mississippi succeeded to title to the bonds at issue require Treasury to pay the proceeds of matured and unredeemed savings bonds to a State that validly escheats title to the bond and submits a proper redemption request.  *See Estes v. United States*, 2015 WL 4971159, at *15.

57.  On multiple occasions, Plaintiff properly requested information from Defendant regarding the Absent Bonds as a part of the presentment and redemption process.  Each time, Defendant has refused to fully comply with Plaintiff's requests in breach of the Treasury regulations.

58.  Defendant's refusal to provide necessary and required information regarding the Absent Bonds, as well as its implicit refusal to redeem the proceeds of bonds to which Mississippi holds sole and proper title via valid judicial proceedings, constitutes a breach of the U.S. savings bond contracts.

59.  As a direct proximate result of the Defendant's breach of the U.S. savings bond contracts, and Defendant's failure to allow the redemption and payment process to proceed, Plaintiff has suffered substantial damages believed to be in excess of $155,000,000.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant on Count I of Plaintiff's Complaint; that Plaintiff be awarded damages in an amount equal to the matured

value, plus applicable interest of all Absent Bonds — believed to be in excess of $155,000,000 — now owned by Plaintiff; that Plaintiff be awarded the expense of this action, including attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable.

## COUNT II

### (Breach of Implied-in-Fact Contract)

60.   Plaintiff incorporates by reference the allegations in paragraphs 1-59 as though fully set forth herein.

61.   Alternatively, the subject U.S savings bonds are implied-in-fact contracts between the parties hereto.  Plaintiff is a party in privity with Defendant because Mississippi became the sole title owner of the Absent Bonds pursuant to valid judicial escheat proceedings.

62.   On multiple occasions, Plaintiff properly requested information from Defendant regarding the Absent Bonds as a part of the presentment and redemption process.  Each time, Defendant has refused to fully comply with Plaintiff's requests in breach of Treasury regulations.

63.   Defendant's refusal to provide necessary and required information regarding the Absent Bonds, as well as its implicit refusal to redeem the proceeds of bonds to which Mississippi holds sole and proper title via valid judicial proceedings, constitutes a breach of the U.S. savings bond contracts.

64.   As a direct proximate result of the Defendant's breach of the U.S. savings bond contracts, and Defendant's failure to allow the redemption and payment process to proceed, Plaintiff has suffered substantial damages believed to be in excess of $155,000,000.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant on Count II of Plaintiff's Complaint; that Plaintiff be awarded damages in an amount equal to the matured value, plus applicable interest of all Absent Bonds — believed to be in excess of $155,000,000 — now owned by Plaintiff; that Plaintiff be awarded the expense of this action, including attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable.

## COUNT III

### (Breach of Fiduciary Duties—Express Contracts)

65. Plaintiff incorporates by reference the allegations in paragraphs 1-64 as though fully set forth herein.

66. When Defendant entered into contracts in the form of U.S. savings bonds, it assumed the fiduciary responsibility of upholding those contracts.  Plaintiff has recognized and relied upon these fiduciary responsibilities by taking title to the Absent Bonds via valid escheat proceedings in compliance with the Escheat Decision, case law, and applicable Treasury Regulations.  As the result of these valid judicial proceedings, contractual privity exists between Mississippi and Defendant, obligating Defendant as fiduciary to redeem the U.S. savings bonds to which the State of Mississippi succeeded all legal title, ownership, and rights.

67. Defendant repeatedly assured U.S. savings bond owners of Defendant's intention and obligation to pay out the bond proceeds upon a redemption request.  Such assurances induced a trust and confidence in Defendant by Plaintiff.  In equity and good conscience, the parties hereto were bound to act in good faith and with due respect to one another's interest as parties to these contracts.

68.     The owners of U.S. savings bonds have for decades recognized and relied upon these fiduciary obligations by agreeing to place their money in Defendant's custody in exchange for Defendant's promise to redeem the bonds in accordance with applicable Treasury Regulations.

69.     Mississippi's judicial escheatment of the Absent Bonds resulted in Mississippi becoming the true and rightful owner of each bond and, therefore, each bond represented a binding contract between the parties.  Defendant's fiduciary responsibilities to uphold the contracts extend to Plaintiff and the State of Mississippi as the owner and title holder.

70.     Defendant betrayed this confidence and breached its duties of loyalty and good faith owed to Plaintiff by, in bad faith, withholding necessary and required information concerning the Absent Bonds and denying presentment of these Bonds.

71.     Plaintiff has suffered damages relying on the continued promise of Defendant's redemption obligation per the terms of the applicable Treasury Regulations and Plaintiff's contracts with Defendant.

        WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant on Count III of Plaintiff's Complaint; that Plaintiff be awarded damages in an amount equal to the matured value, plus applicable interest of all Absent Bonds — believed to be in excess of $155,000,000 — now owned by Plaintiff; that Plaintiff be awarded the expense of this action, including attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable.

### COUNT IV

### (Equitable Estoppel)

72.     Plaintiff incorporates by reference the allegations in paragraphs 1-71 as though fully set forth herein.

73.     Alternatively, Defendant should be equitably estopped from opposing Plaintiffs' claims for relief.

74.     Specifically, Defendant repeatedly and consistently for more than 60 years took the position that Treasury will recognize redemption by States that escheat title to U.S. savings bonds. This position was memorialized in the Escheat Decision, prior policy bulletins, and in litigation (among elsewhere).

75.     In the alternative, these statements constitute false representations of a material fact calculated to convey the impression that Plaintiff, having escheated title to U.S. savings bonds via valid judicial proceedings, would be entitled to redeem the proceeds of those bonds.

76.     On the basis of such statements, Plaintiff formed a reasonable belief that such redemption was authorized.

77.     In reliance on such belief, Plaintiff commenced state escheatment proceedings and submitted numerous information requests in an attempt to redeem the Absent Bonds.  These actions constituted a change in Plaintiff's position causing it substantial damage to be calculated according to proof.

78.     Defendant also concealed material facts from Plaintiff by engaging in self-serving refusals to honor FOIA and other requests that would reveal necessary and requested information about the Absent Bonds despite Defendant's repeated promises to recognize and redeem title-based ownership of bonds via judicial escheatment.

79.   Plaintiff reasonably believed that Treasury would provide information through valid requests and proof of title ownership and redeem Mississippi's savings bonds based on the Defendant's prior statements and conduct.  In reliance on this belief, Plaintiff acted to its detriment by commencing state escheatment proceedings and submitting numerous information requests in an attempt to redeem the Absent Bonds.

80.   In sum (and in the alternative), Defendant's delayed assertions that Treasury regulations bar Treasury from redeeming Mississippi's Absent Bonds and justify withholding necessary information has resulted in substantial material prejudice to Plaintiff because Mississippi relied on Treasury's conduct and statements.  Under principles of equitable estoppel, this conduct should now bar the Defendant from taking these positions in litigation.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant on Count IV of Plaintiff's Complaint; that Plaintiff be awarded damages in an amount equal to the matured value, plus applicable interest of all Absent Bonds — believed to be in excess of $155,000,000 — now owned by Plaintiff; that Plaintiff be awarded the expense of this action, including attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable.

## COUNT V

### (Declaratory Judgment)

81.   Plaintiff incorporates by reference the allegations in paragraphs 1-80 as though fully set forth herein.

82.   Defendant has unlawfully refused to redeem the Absent Bonds and to provide Plaintiff the information necessary to redeem the Absent Bonds.  Defendant has done so based on an incorrect interpretation of applicable Treasury Regulations, and a desire to unilaterally hold significant sums of money for its own use.

83.  Defendant's refusal to redeem savings bonds to which Mississippi holds valid and sole title deprives the State of its property, thus creating an actual controversy between the parties.

84.  Plaintiff has repeatedly sought the confidence and assurance of Defendant that it would redeem the Absent Bonds and turn over required and necessary information regarding the Absent Bonds, and further, that it would not retain property owned by Plaintiff but agree to redeem the proceeds of the Absent Bonds.  However, Defendant has refused to give such confidence and assurance, and in fact, it has denied Plaintiff's rights with respect to such property.

85.  Having legally taken all right, title, and interest in such U.S. savings bond property including all proceeds thereof by valid judicial escheat proceedings and thereby becoming the sole and rightful owner of the same, Plaintiff should not be deprived of its property, and any claim or action Defendant may assert to retain such property should be denied and extinguished.

86.  Conversely, Defendant has no right, title, or interest in the subject bond property that would allow it to retain the same, deny presentment, and refuse redemption of such property and payment of proceeds.

WHEREFORE, Plaintiff prays that this Court enter an order declaring: that Defendant has no right, title, or interest to the Absent Bonds; that Defendant has wrongfully asserted custody and/or ownership over Plaintiff's Absent Bonds, and failed to turn over to Plaintiff required and necessary information regarding the Absent Bonds, namely serial numbers, addresses, and other information which would identify those bonds with last known addresses in the State of Mississippi; that Plaintiff, having been awarded all right, title and interest in the Absent Bonds and their proceeds by valid judicial escheat proceedings, should not be deprived of

its property and Defendant must therefore provide Plaintiff the information necessary to identify those Absent Bonds registered with last known addresses in the State of Mississippi; that Defendant accept Plaintiff's presentment and redemption of the Absent Bonds; that Plaintiff be awarded damages in an amount equal to the matured value, plus applicable interest of all Absent Bonds — believed to be in excess of $155,000,000 — now owned by Plaintiff; that Plaintiff be awarded the expense of this action, including attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable.

## COUNT VI

### (Fifth Amendment Taking of Plaintiff's Property for Public Use)

87.  Plaintiff incorporates by reference the allegations in paragraphs 1-86 as though fully set forth herein.

88.  Defendant's continued failure and refusal to redeem the Absent Bonds to which Plaintiff holds sole and valid title constitutes an unconstitutional taking of Plaintiff's private property by the government for public use, and without just compensation in violation of the Takings Clause of the Fifth Amendment of the United States Constitution.

89.  As a direct and proximate result of the taking of U.S. savings bond ownership rights, Plaintiff has been damaged by Defendant in the amount equal to the matured value of the Absent Bonds which, upon information and belief, is in excess of $155,000,000.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant on Count VI of Plaintiff's Complaint; that Plaintiff be awarded damages in an amount equal to the matured value, plus applicable interest of all Absent Bonds — believed to be in excess of $155,000,000 — now owned by Plaintiff; that Plaintiff be awarded the expense of this action, including

attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable

## COUNT VII

### (Action for Accounting)

90.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-89 as if fully set forth herein.

91.     Plaintiff is in privity with Defendant with respect to those Absent Bonds which escheated to Mississippi via valid judicial proceedings.

92.     Pursuant to the Code of Federal Regulations at 31 C.F.R. § 323.2(b), Defendant owes a fiduciary duty to render full and true information to Plaintiff because Plaintiff is the owner of the Absent Bonds.

93.     Defendant must account for any benefit conferred on it due to its contracts with Plaintiff in the form of U.S. savings bonds.

94.     Plaintiff has made a demand upon Defendant to make and render a full accounting of the required and necessary information regarding the Absent Bonds, namely serial numbers, addresses, and other information which would identify those bonds registered with last known addresses in the State of Mississippi.

95.     Despite the demand, Defendant has refused to make and render a full accounting of the Absent Bonds, namely serial numbers, addresses, and other information which would identify those bonds with last known addresses in the State of Mississippi.

96.     The actions of Defendant have excluded Plaintiff from the possession and use of Plaintiff's property, and Defendant owes money to Plaintiff as a result of Plaintiff's attempts to redeem the Absent Bonds in compliance with applicable Treasury Regulations.

97.     Furthermore, the circumstances dictate that Defendant render a full accounting of the Absent Bonds, namely serial numbers, addresses, and other information which would identify those bonds registered with last known addresses in the State of Mississippi.

WHEREFORE, Plaintiff prays that this Court enter an order that Defendant provide an accounting of the Absent Bonds, namely serial numbers, addresses, and other information which would identify those bonds registered with last known addresses in the State of Mississippi, and value of the Absent Bonds and their proceeds; that Plaintiff be awarded the expense of this action, including attorney's fees and case expenses in the prosecution of this case; and that Plaintiff be awarded any and all other further relief that this Court deems just and equitable.

Date: February 16, 2016

Respectfully Submitted,

WALTERS BENDER STROHBEHN
& VAUGHAN, P.C.

By: /s/ J. Brett Milbourn
    J. Brett Milbourn, Ks. Bar #12743,
    *Attorney of Record*
    bmilbourn@wbsvlaw.com
    (816) 421-6620 (Telephone)
    (816) 421-4747 (Facsimile)
    2500 City Center Square
    1100 Main Street
    P.O. Box 26188
    Kansas City, Missouri 64196

Office of The Attorney General, State of
Mississippi, Jim Hood, Attorney General

By:
Geoffrey Morgan MSB No. 3474
George W. Neville MSB No. No. 3822
Martin Millette MSB No. 102416
Special Assistant Attorneys General
Office of the Attorney General
550 High Street, Suite 1200
Jackson, MS  39205
(601) 359-3680 (Telephone)
gmorg@ago.state.ms.us
gnevi@ago.state.ms.us
mamil@ago.state.ms.us

and

David C. Frederick
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
1615 M Street N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dfrederick@khhte.com

ATTORNEYS FOR MISSISSIPPI STATE
TREASURER LYNN FITCH